# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

BASF CORPORATION,

        Plaintiff,

    v.

SNF HOLDING COMPANY; FLOPAM INC.;
CHEMTALL INC.; SNF SAS; and SNF
(CHINA) FLOCCULANT CO., LTD,

        Defendants.

CIVIL ACTION NO.: 4:17-cv-251

## O R D E R

This matter comes before the Court regarding Defendants' Motion for Leave to File Unredacted Version of Doc. No. 360-2 and to Unseal Doc. No. 355. (Doc. 367.) Additionally, before the Court are the following related motions: Plaintiff's Motion to Seal Response in Opposition, (doc. 380), Defendants' Motion to Seal Reply in Support, (doc. 394), and Plaintiff's Motion to Unseal ECF 355, (doc. 408). For the reasons explained below, the Court **GRANTS** Defendants' Motion for Leave to File Unredacted Version of Doc. No. 360-2 and to Unseal Doc. No. 355, (doc. 367), and **DENIES as moot** Plaintiff's Motion to Unseal ECF 355, (doc. 408). In addition, for the purposes of considering Defendants' Motion at bar, the Court **GRANTS** the parties' Motions to Seal their briefing, (docs. 380, 394). Accordingly, the Court **DIRECTS** the Clerk of Court to **DOCKET** the Second Declaration of James W. Dabney, (doc. 369), and all attachments thereto which include Defendants' Motion for Attorneys' Fees and Expenses, (doc. 369-2), to **UNSEAL** the partially redacted version of Defendants' Motion, (doc. 360), and to **UNSEAL** the Summary Judgment Order, (doc. 355). The Court also **DIRECTS** the Clerk of

Court to **DOCKET** and **SEAL** Plaintiff's unredacted Response in Opposition, (doc. 381), and Defendants' unredacted Reply in Support, (doc. 396).

## BACKGROUND

On October 4, 2018, in a sealed order, the Court entered summary judgment in favor of Defendants, invalidating Plaintiff's patent that was the subject of its infringement action.[1] (Doc. 355.) Following the entry of summary judgment, Plaintiff appealed to the Federal Circuit Court of Appeals, (doc. 362), while Defendants filed a Motion for Attorneys' Fees and Expenses, (doc. 360). In its appeal, Plaintiff sought to redact expanded portions of its appellate brief, including a summarized version of this Court's sealed Summary Judgment Order, (doc. 355), but was prohibited from doing so by the Federal Circuit.[2] (Doc. 406.) Underlying the Federal Circuit's denial were Plaintiff's redaction of publicly available information in its brief and Defendants' currently pending Motion to Unseal the Court's sealed Summary Judgment Order, (doc. 367). (Doc. 406, p. 2.) The Federal Circuit stayed Plaintiff's appeal pending this Court's decision on Defendants' unsealing request. (Id. at p. 3.)

I.     **Defendants' Motion for Leave to File Unredacted Version of Doc. No. 360-2 and to Unseal Doc. No. 355 (Doc. 367)**

By this Motion, Defendants request the Court to unseal Document Number 355 (sealed Summary Judgment Order) and also seek leave to file an unredacted *and* unsealed version of Document Number 360-2 (redacted version of Defendants' Motion for Attorneys' Fees and

---

[1]  The Court held that the claims of Plaintiff's patent—U.S. Patent No. 5,633,329 (the "'329 patent")— describe a polymerization process that is essentially identical to a decades-old methodology, the Sanyo SANWET® Process, which is used to make super absorbent polymers. (Doc. 355, pp. 2–4, 12–20.)

[2]  See Fed. Cir. R. 28(d)(1)(A) (limiting the amount of redacted words in appellate briefs to fifteen (15) total absent waiver by motion).

Expenses).[3] (Doc. 367 (hereinafter Motion to File Doc. 360-2 Unredacted and to Unseal Doc. 355).) The sealed Summary Judgement Order contains proprietary information of non-party Sanyo Chemical Industries, Ltd. ("Sanyo"), deemed confidential pursuant to the Protective Order in place for this litigation. (Docs. 39, 355.) Plaintiff filed a redacted Response in Opposition, (doc. 383), and a Motion to Seal an unredacted version of the Response in Opposition, (doc. 380). Defendants then filed a redacted Reply in Support, (doc. 397), and a Motion to Seal an unredacted version of the Reply in Support, (doc. 394). Defendants also filed a Notice of Supplemental Authority in Support, (doc. 404),[4] and a Surreply, (doc. 407).

## A.    The Court's Sealed Summary Judgment Order (Doc. 355)

Although Plaintiff initially opposed unsealing the Summary Judgment Order, (docs. 380, 383), following the Federal Circuit's refusal to allow expanded redactions, it filed its own Motion to Unseal this document. (Doc. 408.) In its Motion, Plaintiff represents that it contacted Sanyo to determine whether it objected to unsealing the Summary Judgment Order but did not receive a response. (Id. at pp. 2–3.) As a result, Plaintiff states that it does not oppose unsealing this Order. (Id.) However, in subsequent briefing, Plaintiff now represents that Sanyo has since responded, requesting that two portions of the Summary Judgment Order remain confidential if it is unsealed.

---

[3] Prior to filing this Motion, Defendants filed a Motion to Seal an improperly redacted version of their Motion for Attorneys' Fees and Expenses, (doc. 363), which the Court granted, (doc. 365). In doing so, the Court also docketed the properly redacted version of this motion, (doc. 360-2), unsealed and open to public view. (Doc. 365, p. 1.) The Court advised Defendants that, if they wished for the Court to consider an unredacted version of their attorneys' fees motion, they would need to file a separate motion seeking leave to file the unredacted version under seal. (Id.) Rather than following this course, however, Defendants responded with their present Motion for Leave to File Unredacted Version of Doc. No. 360-2 and to Unseal Doc. No. 355, in which they seek permission to file the attorneys' fees motion unredacted and unsealed because they no longer believe any of the contents require such protection. (Doc. 367.)

[4] The supplemental authority alerts the Court to the United States Supreme Court's recent unanimous decision in Helsinn Healthcare S.A. v. Teva Pharmaceuticals USA, Inc., 586 U.S. ___, 139 S. Ct. 628 (2019), which affirmed the Federal Circuit's decision, 855 F.3d 1356 (Fed. Cir. 2017), a decision relied upon by this Court in granting Defendants' summary judgment, (see doc. 355).

(Doc. 411.) As proof of Sanyo's objection, Plaintiff provides an apparent email exchange between its counsel and counsel for "Sanyo Chemical Texas Industries, LLC" and "SANAM Corporation," wherein two documents cited by the Summary Judgment Order are deemed highly confidential and subject to redaction. (Doc. 411-1.)

Defendants oppose Plaintiff's Motion to Unseal, arguing that it is contrary to the Federal Circuit's mandate, unsupported by competent proof, and was filed "to obscure the strategic and insincere character" of Plaintiff's opposition. (Doc. 409, p. 4.) Defendants charge that Sanyo "has long known about the summary judgment decision [], but has made no claim that the decision discloses anything that could rightly be considered confidential or proprietary." (Id. at p. 3.) As to Plaintiff's current position—that the Summary Judgment Order should be unsealed but partially redacted—Defendants take issue with Plaintiff's reliance upon an April 17, 2019 email purportedly sent by Sanyo's counsel. (Doc. 413, pp. 3–4.) They argue that the "Sanyo" entities named therein never produced any documents in this litigation or made any confidential designations and that the Sanyo entity which produced the at-issue documents (Sanyo Chemical Industries, Ltd.) did so voluntarily. (Id.) They also point out, correctly, that the author of the email neither indicated personal knowledge of relevant facts nor made any reference to the summary judgment decision. (Id.) Moreover, Defendants argue the documents mentioned in the email, and cited in the Order, do not actually contain anything confidential. (Id. at pp. 1–3.) As such, Defendants conclude that Plaintiff fails to meet its burden under Federal Rule of Civil Procedure 26(c) to keep the Summary Judgment Order sealed or to have it docketed partially redacted. (Id. at pp. 4–5.)

**B.    Defendants' Redacted Motion for Attorneys' Fees and Expenses (Doc. 360-2)**

Defendants now seek to file their Motion for Attorneys' Fees and Expenses in an unredacted and unsealed form, but they originally sought to filed it sealed and redacted "because

it contained information that BASF Corp. and Daniel International Corp. ('Daniel') had designated as Highly Confidential Information pursuant to the blanket Protective Order." (Doc. 367, p. 3.) Upon review, however, the four redacted portions are not confidential "to Defendants' understanding," (id.), and should be docketed unredacted and unsealed, (id. at p. 1). Three of the four redactions in the attorneys' fees motion, Defendants explain, were of an interrogatory answer by Plaintiff which parallels a public assertion Plaintiff made to the Patent and Trademark Office during *inter partes* review. (Id. at p. 3.) According to Defendants, the fourth redaction concerns two sentences of content produced by Daniel, and Daniel has stated, through its counsel, that it has no position on whether the content should remain confidential. (Id.) In light of the asserted non-confidentiality, and the common law right of access to judicial records, Defendants argue they should be permitted to file their Motion for Attorneys' Fees and Expenses unredacted and unsealed. (Id. at pp. 1, 3–4.)

In response, Plaintiff contends that Defendants should be precluded from publicly filing their attorneys' fees motion without redactions because they cannot show sufficient grounds for the Court to revisit its prior order sealing the redacted version, (doc. 365), and because the currently redacted content is not subject to the public's right of access.[5] (Doc. 383, p. 14.) As to the content from Daniel, Plaintiff asserts it was only attached to a motion the Court dismissed as moot when entering summary judgment and was never substantively considered by the Court, thereby removing it from presumed public access. (Id. at pp. 14–15.) Additionally, Plaintiff avers that Daniel still considers the information to be highly confidential. (Id. at pp. 15–16.) Regarding the interrogatory answer, Plaintiff contends it also is not subject to the public's right of access because

---

[5] In its redacted Response in Opposition, Plaintiff also vigorously opposes unsealing the Summary Judgment Order. (Doc. 383, pp. 7–14). But, given its change in position on this issue following the Federal Circuit's denial, discussed above, the Court declines to consider Plaintiff's now stale arguments against unsealing that Order and will proceed in light of Plaintiff's most recent briefing, (see docs. 408, 411).

the Court did not rely upon it when deciding summary judgment.  (Id. at pp. 16–17.)  Plaintiff also argues the interrogatory answer should remain redacted due to Defendants' failure to timely challenge its confidential designation under the Protective Order.  (Id. at p. 17.)

In their Reply, Defendants assert that because their attorneys' fees motion is presented to the Court to invoke its judicial powers, it is subject to the public's presumed access right.  (Doc. 397, p. 7.)  As such, they argue that Plaintiff fails to meet its burden to show a privacy interest in the redacted attorneys' fees motion which outweighs this right of access.  (Id. at pp. 6–7, 13–15.)  Defendants also dispute that Daniel and Sanyo have expressed objections to making the attorneys' fees motion publicly available in an unredacted form.  (Id.)  And, in any event, Defendants contend Plaintiff has no standing to raise these third parties' privacy interests.  (Id. at pp. 7, 15–17.)  Lastly, as to the alleged untimeliness of their confidentiality objection and the need to show sufficient grounds for the Court to reconsider its prior order sealing the attorneys' fees motion, Defendants assert the burden to establish good cause for sealing court documents remains with Plaintiff.  (Id. at pp. 17–20.)  The Court's prior ruling and the parties' earlier confidentiality designations, Defendants contend, are "irrelevant" to whether the attorneys' fees motion should be kept from public view.  (Id. at p. 18.)

## II.    Confidentiality and the Protective Order

### A.    The Protective Order

Significant to the present dispute, at the beginning stages of this litigation, the United States District Court for the Southern District of Texas, where this case originated, issued a Protective Order, which sets forth the procedures to be followed for designating and keeping confidential materials produced during the course of discovery.[6]  (Doc. 39.)

---

[6]  After more than three years of litigation in the Southern District of Texas, this case was transferred to the Southern District of Georgia on December 20, 2017.  (Docs. 288, 289.)

The Protective Order limits disclosure of information and applies to any document or information designated as "Confidential" or "Highly Confidential" by parties or non-parties. (Id. at pp. 1, 8.) Its protections extend to other documents that discuss designated information. (Id. at p. 1.) The "Confidential Information" designation applies to documents that "contain[] trade secrets or commercial information not publicly known, which . . . is of technical or commercial advantage to its possessor, . . . or other information required by law or agreement to be kept confidential." (Id. at p. 2.) The "Highly Confidential Information" designation applies to documents that "contain[] information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, any other sensitive trade secret information, or information capable of being utilized for the preparation or prosecution of a patent application dealing with such subject matter." (Id.) These designations, however, do not properly apply to "information that has been disclosed to the public or third persons in a manner making such information no longer confidential." (Id.)

If one party disputes the confidentiality designation of a particular document, it "may seek an order to alter the confidential status of the designated information." (Id. at p. 5.) Under the terms of this Order, parties were authorized by the Southern District of Texas to electronically file documents containing designated confidential information under seal. (Id. at p. 8.) Nonetheless, as this Court recently explained, (doc. 365), parties are not permitted by the Southern District of Georgia's Local Rules to automatically file documents under seal. See Local R. 79. 7 ("Any person desiring to have any matter placed under seal shall present a motion setting forth the grounds why the matter presented should not be available for public inspection.").

## B. The Information Sought to be Disclosed by Defendants

It appears from the Court's review of this case's docket that many of the sealed documents were automatically filed under seal, pursuant to the Protective Order, without motion and specific consideration by the Southern District of Texas. (E.g., Docs. 107, 127, 207, 238–241, 343-2.) In these documents resides the information that Defendants seek to make publicly available by their present Motion to File Doc. 360-2 Unredacted and to Unseal Doc. 355. (See Doc. 367.)

### (1) Information in Defendants' Motion for Attorneys' Fees and Expenses Sought to be Kept Confidential by Plaintiff

Plaintiff seeks to maintain the confidentiality of the currently redacted, but unsealed, portions of Defendants' Motion for Attorneys' Fees and Expenses, (doc. 360-2). (Doc. 383, p. 4.) There are two redactions at issue. The first redaction concerns a portion of Plaintiff's contention interrogatory response that Defendants quote four times in their attorneys' fees motion. (Id. at pp. 4–5; see doc. 360-2, pp. 7, 8, 10, 13 (citing doc. 207-31, p. 29).) Plaintiff argues its interrogatory responses should remain confidential "because of pervasive reference and discussion of documents designated as highly confidential pursuant to the Protective Order, including documents that [Defendants] designated . . . that show commercial success of [their] infringing methods." (Doc. 383, p. 5.) Plaintiff, however, does not offer particularized argument as to why the singular, cited portion should remain confidential; instead, it discusses the propriety of disclosing the interrogatory response in its entirety. (See id. at pp. 5, 16–17.)

The second redaction concerns information produced by third party Daniel and designated highly confidential. (Id. at pp. 4–6.) The portion of information quoted by Defendants in their attorneys' fees motion relates to technical information regarding Daniel's work with Celanese in

1985.[7]  (Id.)  Defendants quote and redact two sentences of this information once in their Motion

for Attorneys' Fees.  (Doc. 360-2, p. 19 (citing doc. 343-2, p. 2).)  Plaintiff argues generally that

this quotation is not subject to presumed public access and that it should remain confidential

pursuant to Daniel's designation under the Protective Order.  (Doc. 383, pp. 5–6, 15–16.)  Plaintiff

does not, however, make any particularized argument as to why the specific quoted material itself

deserves continued confidentiality.  (See id.)

     (2)     **Information in the Court's Sealed Summary Judgment Order Sought to be Kept Confidential by Plaintiff**

     As noted above, following developments in its appeal at the Federal Circuit and after

receiving communications from Sanyo's counsel, Plaintiff seeks to keep certain portions of the

Court's sealed Summary Judgment Order confidential by partially redacting its contents.

(Docs. 408, 411.)  Specifically, pursuant to the Protective Order and Sanyo's representations made

through its counsel, Plaintiff requests the Court to unseal, but redact, particular portions of the

Summary Judgment Order which relate to the manufacturing process and raw materials used by

Sanyo to create super absorbent polymers.  (Docs. 411, 411-1.)  These portions cite to discovery

materials identified by Sanyo as warranting continued protection in light of the parties' requests

to unseal the Summary Judgment Order.  (Docs. 408, 411; see doc. 411-1, pp. 2–3; see also

doc. 207-11, pp. 8–14.)

## DISCUSSION

     The right of access to judicial records pursuant to common law is well-established.  See

Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); see also Brown v. Advantage Eng'g,

---

[7]  Celanese Corporation licensed the Sanyo SANWET® Process, discussed below, from Sanyo on July 1, 1985.  (Doc. 355, p. 4.)  Per that license, Celanese put the Sanyo SANWET® Process into commercial production in the United States the next year.  (Id.)  Celanese's acquisition and use of this Process, determined by the Court to parallel Plaintiff's patent, within the United States prior to 1995 required invalidation of said patent.  (Id. at pp. 11–33.)

Inc., 960 F.2d 1013, 1016 (11th Cir. 1992). This right extends to the inspection and the copying of court records and documents. See Nixon, 435 U.S. at 597. The right to access, however, is not absolute. See Globe Newspaper Co. v. Superior Court for Norfolk Cty., 457 U.S. 596, 598 (1982). When deciding whether to grant a party's motion to seal, the court is required to balance the historical presumption of access against any significant interests raised by the party seeking to file under seal. See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001); Newman v. Graddick, 696 F.2d 796, 803 (11th Cir. 1983). In balancing the interests, courts consider, among other things:

> whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

Romero v. Drummond Co., Inc., 480 F.3d 1234, 1246 (11th Cir. 2007). "A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information." Id. (citing Nixon, 435 U.S. at 598). Moreover, the common-law right of access to judicial proceedings does not extend to discovery documents or discovery disputes, "as these materials are neither public documents nor judicial records." Chicago Tribune Co., 263 F.3d at 1311. However, discovery material submitted in conjunction with substantive motions that are "presented to the court to invoke its judicial powers or affect its decisions" is subject to the public right of access, regardless of whether the motion is dispositive or not. Romero, 480 F.3d at 1245–46 (citations omitted); see also FTC v. AbbVie Prods. LLC, 713 F.3d 54, 62–64 (11th Cir. 2013) (discussing what documents constitute judicial records).

Though a stipulated protective order may provide that documents designated confidential are presumptively protected, a party's calling a document confidential pursuant to a protective

order "does not make it so" when it comes to filing the document with the Court.  Estate of Martin Luther King, Jr., Inc. v. CBS, Inc., 184 F. Supp. 2d 1353, 1362 (N.D. Ga. 2002).  "[C]onsensual protective orders merely delay the inevitable moment when the court will be called upon to determine whether Rule 26(c) protection is deserved, a decision ultimately rooted in whether the proponent demonstrates 'good cause.'"  Id.  Even when the motion to seal is presented without any challenge from the litigants, the judge remains "the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal the record (or part of it).  He may not rubber stamp a stipulation to seal the record.'"  Id. at 1363 (quoting Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999)).  "Once a matter is brought before a court for resolution, it is no longer the parties' case, but also the public's case."  Brown, 960 F.2d at 1016.  Thus, as a preliminary matter, "the fact that no third party has moved to unseal the [material] at issue in this case is largely inconsequential."  Estate of Martin Luther King, Jr., Inc., 184 F. Supp. 2d at 1363.

Documents and information initially sealed pursuant to a Federal Rule of Civil Procedure 26(c) protective order may be subsequently made public upon a showing of "good cause" by the party seeking disclosure.  Chicago Tribune Co., 263 F.3d at 1313.  Where there was no challenge to the initial confidentiality designation, the party filing the motion to unseal "must establish good cause for continued protection under Rule 26."  Id.  To assess whether "good cause" has been shown, courts "balance the party's interest in obtaining access against the other party's interest in keeping the information confidential."  Id. (citing Farnsworth v. Procter & Gamble, Co., 758 F.2d 1545, 1547 (11th Cir. 1985)).  When the designated confidential information concerns asserted trade secrets, courts must examine whether: 1) the party seeking protection consistently treated the information as closely guarded secrets; 2) the information represented substantial value to that

party; 3) the information would be valuable to the party's competitors; and 4) the information derived its value by virtue of the effort of its creation and lack of dissemination. Id. at 1313–14. The Rule 26 balancing test described here parallels, and is coextensive of, the balancing test courts are to conduct under the public's common-law right of access. Id. at 1313, 1315. Furthermore, unsealing a record or modifying a protective order is within the district court's sound discretion.

AbbVie Prods. LLC, 713 F.3d at 61 (citations omitted).

## I. Whether to Unseal and File an Unredacted Version of Defendants' Motion for Attorneys' Fees and Expenses

### A. The Content Sought to be Made Public is Subject to the Common-Law Right of Access

As explained above, the material in Defendants' currently redacted Motion for Attorneys' Fees and Expenses, (doc. 360-2), sought to be made public concerns two sentences of language quoted from discovery material produced by Daniel and a single quoted phrase from Plaintiff's interrogatory responses. Plaintiff avers the Daniel content is not subject to a presumed right of access because it did not accompany a dispositive summary judgment motion, and that its interrogatory response is not subject to a presumed right of access because it was discovery material not relied upon by the Court in deciding summary judgment. (Doc. 383, pp. 14–17.) Both arguments are wholly without merit and misconstrue controlling precedent.

The Eleventh Circuit Court of Appeals has made clear that, regardless of whether the district court expressly considered a certain document, the key issue in "determin[ing] whether a document is a judicial record depend[s] on the type of filing it accompanied." AbbVie Prods. LLC, 713 F.3d at 64. Applying this standard "does *not* involve . . . determining the actual role the document played . . . [or] counting the number of times the district court cited it while deciding a motion." Id. (emphasis added). When looking to the type of filing, documents submitted in

conjunction with discovery disputes (e.g., motions to compel) are *not* judicial records, whereas discovery documents accompanying a motion that is integral to the judicial resolution of the merits are judicial records. Id. at 63–64 (materials submitted with motions to dismiss, motions for summary judgment, or complaints are subject to the presumption of public access). Moreover, a motion that speaks to the merits of the underlying controversy, which is "presented to the court to invoke its powers or affect its decisions," is itself a judicial record, regardless of whether it is "characterized as dispositive." Romero, 480 F.3d at 1245–46 (citation and internal quotations omitted); see also Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC, 918 F.3d 1161, 1166–69 (11th Cir. 2019) (discussing when and what documents constitute judicial records subject to the common law right of access)

Here, Defendants' Motion for Attorneys' Fees and Expenses, (doc. 360-2), seeks the Court's authority to order Plaintiff to pay a substantial sum in fees and expenses—in excess of $14 million. Because Defendants' Motion invokes the Court's powers to determine substantive rights and asks it to assess the underlying merits of Plaintiff's case, the Motion and the discovery material it discusses are plainly judicial records. See, e.g., Romero, 480 F.3d at 1245–46 (motion to approve settlement agreement, motion to terminate derivative claim, and motion to reconsider protective order are judicial records); Prater v. Commerce Equities Mgmt. Co., No. CIV.A. H-07-2349, 2008 WL 5140045, at *9–10 (S.D. Tex. Dec. 8, 2008) (finding motion for attorneys' fees subject to public's right of access despite confidentiality agreement); Therefore, the common law presumption of public access attaches to Defendants' Motion for Attorneys' Fees and Expenses and the content therein.

**B.     Plaintiff Fails to Establish Good Cause for Maintaining the Confidentiality of This Content**

As the party seeking to keep confidential material that is subject to the common law right of access and which was designated as confidential—without opposition—under the Protective Order, Plaintiff must establish "good cause" to maintain the confidentiality of the redacted portions of Defendants' Motion for Attorneys' Fees and Expenses.[8] Advance Local Media, LLC, 918 F.3d at 1173; Romero, 480 F.3d at 1246; Chicago Tribune Co., 263 F.3d at 1313. In this case, the Court finds that Plaintiff fails to establish "good cause" to keep the subject content confidential.

**(1)     The Phrase from Plaintiff's Interrogatory Response**

Plaintiff makes no particularized argument on the reasons to keep confidential a single phrase used in its contention interrogatory response. (See Doc. 383, pp. 16–17.) Instead, it misconstrues Defendants' present Motion to File Doc. 360-2 Unredacted and to Unseal Doc. 355 as seeking to open the entire discovery response to public view. (See id.) Defendants rightly state

---

[8] Plaintiff argues the burden to unseal, and file unredacted, the Summary Judgment Order and Motion for Attorneys' Fees and Expenses rests with Defendants, because of previous orders sealing the relevant documents. (Doc. 383, pp. 7–10, 14.) Accordingly, Plaintiff asserts that Defendants must meet the high bar of establishing grounds for the Court to reconsider these previous orders. (Id.) This is not so for two reasons. First, the Protective Order in this case was entered by the consent of the parties, without an express "good cause" finding by the Southern District of Texas. (See Doc. 39.) And while the orders to seal cited by Plaintiff do find "good cause" to seal, these Orders were entered pursuant to the Protective Order and without opposition or any analysis of the issues raised herein. (See Docs. 202, 210, 222, 223, 243, 247, 363, 365.) Where a "confidentiality designation was not challenged," the party opposing the motion to unseal "must establish good cause for continued protection." Chicago Tribune Co., 263 F.3d at 1313; see also Estate of Martin Luther King, Jr., Inc., 184 F. Supp. at 1362 ("[C]onsensual protective orders merely delay the inevitable moment when the court will be called upon to determine whether Rule 26(c) protection is deserved, a decision ultimately rooted in whether the proponent demonstrates 'good cause.'"). Only when "the same opposing party," who originally opposed the motion to seal, later seeks to unseal that document does the burden shift. AbbVie Prods. LLC, 713 F.3d at 66. Second, even when a party unsuccessfully opposes a motion to seal in the first instance and subsequently files a motion to unseal the same material, the applicable standard that party must meet remains "good cause." Id. The standard does not escalate to the heightened standard for reconsideration. See id. Accordingly, because the underlying Protective Order was entered by the parties' consent and because the at-issue documents were sealed as a matter of course pursuant to this Protective Order, without opposition by Defendants, the Court finds that Plaintiff bears the burden of establishing "good cause" to keep these judicial records sealed.

that Plaintiff's "arguments are directed to the underlying discovery evidence (namely, the Daniel memo and the interrogatory response), and not the [attorneys' fees motion] itself—but it is the motion that Defendants seek to unseal." (Doc. 397, p. 9.)

Lacking express good cause arguments, Plaintiff contends this phrase should not be disclosed because Defendants were late in challenging the confidentiality designation. (Doc. 383, p. 17.) However, this argument is bound up in Plaintiff's misunderstanding of what it is that Defendants seek to make public. (See id. (criticizing Defendants for not requesting "a narrowly tailored de-designation").) Here, Defendants seek to disclose only a single, narrowly tailored phrase from Plaintiff's interrogatory response, not the entirety of the discovery document itself. What is more, Plaintiff cites no controlling or applicable authority for its contention that this phrase should remain redacted due to the perceived untimeliness of Defendants' request. Defendants' Motion for Attorneys' Fees and Expenses, moreover, *did not exist* at the time Plaintiff designated its interrogatory response as confidential, eroding the salience of Plaintiff's timeliness argument. And, in any event, Plaintiff does not identify any significant interests which support keeping this specific content redacted. (See id. at pp. 4–5, 7–8, 14, 16–17.)

Finally, the specific phrase sought to be disclosed parallels, almost verbatim, a public representation made by Plaintiff to the Patent and Trademark Office during *inter partes* review of the patent at issue in this litigation: "[P]rior to the invention of the '329 patent, conical tapers and inert gas had never been used to remove polymer gels from reactors." Br., SNF Holding Co. v. BASF Corp., IPR2015-00600 (P.T.A.B. Nov. 10, 2015), ECF No. 21, *available at* https://ptab.uspto.gov/#/public/publicsearch. Thus, the disputed phrase has long been, with the exception of two words, available to the public. On this basis alone the redacted quote from Plaintiff's interrogatory response should be made public in Defendants' attorneys' fees motion.

For all of these reasons, Plaintiff cannot establish the requisite "good cause" to keep redacted its interrogatory response phrase that is quoted in Defendants' Motion for Attorneys' Fees and Expenses.

### (2)    The Two Sentences from Daniel's Document

Plaintiff argues this content should remain redacted because Daniel generally considers the information it produced in this litigation "to be highly confidential and sensitive" and did so in reasonable reliance on the Protective Order.[9]  (Doc. 383, pp. 15–16.)  Defendants counter that Daniel has voiced no objection to unredacting the specific quoted material and that Daniel's confidentially designation of its entire discovery production is irrelevant to whether a two-sentence statement in a judicial record should be made public.  (Doc. 397, pp. 13–14.)  Defendants further argue that Plaintiff lacks standing to raise this confidentiality objection.  (Id. at pp. 15–17.)  As explained below, the Court finds that this two-sentence statement should also be unredacted.

Plaintiff attempts to represent that Daniel wishes to keep this two-sentence statement confidential but submits no competent evidence on this point.  Merely showing that Daniel opposed producing discovery documents without a protective order, (docs. 383-2, 383-7), does not

---

[9]  To support this proposition, Plaintiff selectively quotes the following passage from the United States Court of Appeals for the Second Circuit: "Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need."  SEC v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001) (citation and internal quotations omitted).  Divorced from context, this Second Circuit rule would seemingly dictate that Daniel's content should remain redacted.  This rule, however, applies to "public dissemination of certain discovery materials that are never introduced at trial," such as a deposition transcript, not to judicial records that merely quote from discovery materials.  Id. at 229, 231, 234.  Because Defendants' Motion for Attorneys' Fees and Expenses is a judicial record, this rule against disclosure of raw discovery materials is of no moment.  See also In re Grand Jury Proceedings, 995 F.2d 1013, 1020 (11th Cir. 1993) (rejecting Second Circuit's requirement to show compelling circumstances to obtain documents shielded by a protective order and permitting prosecutor to obtain such documents for use in a grand jury proceeding).

indicate an opposition to disclosure of this singular statement in a judicial record.[10]  While the declaration of Daniel's counsel suffices to establish that the discovery it produced in this litigation contains confidential and proprietary business information, it does not specifically identify that information in relation to the two sentences now at issue.  See In re McCormick & Co., Pepper Prods. Mktg. & Sales Practices Litig., 316 F. Supp. 3d 455, 468–69 (D.D.C. 2018) (finding generalized assertions of confidentiality insufficient to overcome the presumption of public access).  In contrast, Defendants have produced evidence showing that, after being apprised of their request to unseal this specific statement, Daniel failed to voice any opposition.  (Doc. 397, pp. 14, 16; see docs. 397-1, 397-3.)

In addition to not providing evidence which indicates that Daniel opposes the disclosure of this particular statement, Plaintiff cannot establish its own privacy interest in this quoted material. Plaintiff does not even attempt to advance any privacy interest or other particularized reason showing its interest in keeping these two sentences redacted.  Further, Plaintiff does not show how making this statement public will harm it or Daniel.  Plaintiff's conclusory invocation of its obligations under the Protective Order, (doc. 383, pp. 11, 16), is simply not enough to overcome the public's presumed right of access.  Although not necessarily a failure of standing in the constitutional sense, where a party is not the entity that produced the material sought to be made public and has neither a privacy nor proprietary interest in it, there is a lack of good cause to keep the material confidential.[11]  See Romero, 480 F.3d at 1246–48 (reversing denial of a motion to

---

[10]  Moreover, this evidence concerns Daniel's opposition to a subpoena from Defendant Chemtall Inc. in a related, currently stayed action, Order, Chemtall Incorporated v. BASF SE, 4:17-cv-186 (S.D. Ga. Jan. 7, 2019), ECF No. 259.  (See Docs. 383-2, 383-7.)  As such, it is of relatively little, if any, value in determining Daniel's position regarding the disclosure of this two-sentence statement.

[11]  Given the Court's findings in this section—particularly that Plaintiff fails to provide direct evidence of Daniel's position on the issue decided herein—the Court need not, and does not, address whether Plaintiff has standing to raise Daniel's unvoiced interests in opposition.  Daniel's decision to not intervene in

unseal where the party opposing had no identifiable interest in the sealed material). Furthermore, the Court has reviewed these two sentences and finds that, in the context of Defendants' Motion for Attorneys' Fees and Expenses, (doc. 360-2, p. 19), they do not reveal enough information to harm Daniel's generalized privacy interest. The statement is only generic description, juxtaposed with a contrary claim made by Plaintiff, that does not explain how the ends described are achieved.

For all of these reasons, Plaintiff cannot establish the requisite "good cause" to keep redacted the two sentences from Daniel's documents that are quoted in Defendants' Motion for Attorneys' Fees and Expenses. And, as explained above, Plaintiff does not show "good cause" to keep the quoted phrase from its discovery response redacted. Thus, Defendants' Motion for Attorneys' Fees and Expenses, (doc. 360), is due to be filed unreacted and unsealed.

## II. Whether to File Unredacted the Court's Summary Judgment Order

This Court, pursuant to the Protective Order, filed its Summary Judgment Order under seal because it relied upon and directly quoted motions and exhibits filed under seal. (See Doc. 355.) After initially opposing Defendants' Motion to Unseal the Summary Judgment Order, (docs. 367, 383), and then—for a brief period—reversing course and seeking instead to unseal the Order, (doc. 408), Plaintiff now contends the Summary Judgment Order should be unsealed but partially redacted, (doc. 409). Defendants' position remains the same—the Order contains no description of the Sanyo SANWET® Process that could rightly be considered confidential or proprietary and should be disclosed in full. (Docs. 367, 397, 409, 413.) Defendants also maintain that Plaintiff has no standing to raise Sanyo's privacy interests, (docs. 397, 409, 413)—a charge that Plaintiff makes no response to whatsoever, (see docs. 408, 411).

_____

opposition to unsealing the statement at issue here, when it intervened in Defendant Chemtall's related action to oppose discovery requests, lends further credence to the Court's determination that its statement in Defendants' Motion for Attorneys' Fees and Expenses is no longer deserving of confidential protection.

In light of this posture, there are two questions before the Court: (1) whether Plaintiff has standing to oppose the full disclosure of this Court's Summary Judgment Order and Sanyo's information; and (2) if so, whether to unseal the Summary Judgment Order in its present, unredacted form or whether to unseal the Summary Judgment Order and file it with Plaintiff's proposed redactions. Having considered the parties' arguments, the Court finds that Plaintiff has no standing to represent Sanyo's interests, and, even assuming *arguendo* that it does, the Summary Judgment Order should nonetheless be disclosed without redaction.[12]

### (A)      Plaintiff Does Not Have Standing to Represent Sanyo's Privacy Interests

It is axiomatic that a litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. 490, 499 (1975). This prudential standing limitation means a plaintiff cannot represent the interests of third parties who are not part of the lawsuit, absent a recognized exception. See United States v. Blake, 868 F.3d 960, 969–70 (11th Cir. 2017) (citing Craig v. Boren, 429 U.S. 190, 192–94 (1976)). The prohibition against representation of third-party interests "promotes the fundamental purpose of the standing requirement by ensuring that [] courts hear only concrete disputes between interested litigants who will frame the issues properly." Commissioned II Love, Savannah State Univ. Chapter v. Yarbrough, 621 F. Supp. 2d 1312, 1320 (S.D. Ga. 2007) (citing Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 220–21 (1974)).

To assert the rights of a third party, (1) the litigant must have suffered an "injury-in-fact" giving rise to a "sufficiently concrete interest" in the outcome of the disputed issue; (2) the litigant must have a "substantial relationship" with the third party; and (3) there must exist some

---

[12]  As a preliminary matter, because the Court's Summary Judgment Order is a judicial record, which was sealed as a matter of course pursuant to the parties' Protective Order, Plaintiff must establish the requisite "good cause" to overcome the public's presumed right of access in this Order.

"impediment to" the third party's ability to protect his or her own interests. Harris v. Evans, 20 F.3d 1118, 1122–24 (11th Cir. 1994) (citations omitted). It is widely recognized that non-parties have standing to intervene in an action to seek, or oppose, disclosure of sealed court records. See, e.g., Nixon, 435 U.S. at 599 n.11 (petitioner-intervenor "has standing to object to the release of the tapes" because they were subpoenaed from him and recorded his conversations); United States v. Valenti, 987 F.2d 708, 711 (11th Cir. 1993) (recognizing a newspaper's "standing to intervene for purposes of challenging its denial of access to the underlying litigation, even though it is otherwise not a party"); Brown, 960 F.2d at 1016 (stating "any member of the public has standing to view documents in the court file that have not been [lawfully] sealed . . . and to move the court to unseal the [] file in the event [it was] improperly sealed" and vacating district court's denial of motion to intervene); Nelson v. Nissan N. Am., Inc., No. CV 11-5712 (JEI/AMD), 2014 WL 12617593, at *2 (D.N.J. Dec. 22, 2014) (permitting non-party to intervene under Federal Rule of Civil Procedure 24(b) to oppose the unsealing of discovery materials it submitted under a protective order); see also Advance Local Media, LLC, 918 F.3d 1161, 1171–74 & n.12 (11th Cir. 2019) (finding that district court properly permitted non-party to intervene under Rule 24 in action seeking to unseal court documents).

This blackletter principle, that interested non-parties may intervene in relation to sealing or unsealing court records, is even spelled out in the Protective Order. It states: "Any person or party subject to this Protective Order *who may be subject to a motion to disclose another party's information* designated 'Confidential' or 'Highly Confidential' pursuant to this Protective Order must promptly *notify that party* of the motion so that the party *may have an opportunity to appear* and be heard on whether that information should be disclosed." (Doc. 39, p. 9 (emphasis added).) All of this is to say simply that Sanyo could have intervened but chose not to do so.

Both parties have put forth evidence showing that Sanyo knew of Defendants' request to unseal the Summary Judgment Order yet did not intervene to protect the confidentiality of its documents. Initially, Sanyo gave a tepid response before then asserting a conclusory privacy interest via Plaintiff. In an October 18, 2018 email cited by both parties, counsel for the Sanyo entities first represented that: "Our clients have not seen the summary judgment order and take no position regarding unsealing it. They have fully complied with their obligations under the subpoenas and do not wish to be involved in litigation between your respective clients." (Docs. 383-5, 369-1.) However, in an April 17, 2019 email submitted by Plaintiff, Sanyo's counsel stated that: "Some of the documents provided contain information related to the manufacturing process for and specifications of raw materials used in super absorbent polymers that our client still commercially manufacturers. [Sanyo] therefore object[s] to portions of documents discussing processes and specifications still in use and any references to those documents becoming part of the public record."[13] (Doc. 411-1, p. 2.) Sanyo's counsel provided specific Bates numbers of the documents containing information it wishes to remain confidential, which Plaintiff then used in proposing a redacted version of the Summary Judgment Order. (Docs. 411, 411-2.) Despite having notice of Defendants' request to unseal the Summary Judgment Order[14] and apparently desiring to keep certain content confidential, Sanyo chose to not appear; instead, it only asserted its opposition in an email to Plaintiff.

---

[13] Given that Defendants have also relied on an email from this counsel, who represents two related Sanyo entities, to support its position, (doc. 369-1), the Court disregards Defendants' challenges to the authenticity of this email and the representations made therein.

[14] For purposes of clarity, the Court notes that Defendants provided the Sanyo entities with notice of their request on November 19, 2018, (docs. 397-1, 397-2), the same day they filed their Motion to File Doc. 360-2 Unredacted and to Unseal Doc. 355, (doc. 367). (See also id. at p. 4 ("Defendants are providing a copy of this motion to counsel for non-parties Sanyo and Daniel so that they can come forward with any basis they may have for opposing it.").) Plaintiff also provided notice on March 20, 2019, following the Federal Circuit's decision to stay its appeal, (doc. 411-1).

For Plaintiff to represent Sanyo's confidentiality interests, it must show both a substantial relation to Sanyo and that Sanyo was somehow hindered in asserting its own rights. Harris, 20 F.3d at 1123–24. Plaintiff, however, makes no response to the standing issue raised by Defendants. Faced with this silence, the Court is left to guess as to what grounds Plaintiff may have to properly represent Sanyo's stated interest in maintaining the confidentiality of certain manufacturing and materials information related to super absorbent polymers. Even assuming that Plaintiff has the type of relationship with Sanyo that would authorize third-party standing on this issue, there is no evidence that Sanyo faces any difficulty in representing its own confidentiality interests. Sanyo has legal counsel and notice of this issue. Moreover, having submitted documents pursuant to the Protective Order, Sanyo has knowledge of its right "to appear and be heard on whether [its] information should be disclosed." (Doc. 39, p. 9.)

Given these facts, Plaintiff has not shown any impediment to Sanyo's ability to protect its own privacy and commercial interests. Furthermore, Plaintiff has not set forth any colorable interest of its own in maintaining the confidentiality of Sanyo's information that would give rise to standing of its own accord. Cf. Cellairis Franchise, Inc. v. Duarte, 193 F. Supp. 3d 1379, 1381–82 (N.D. Ga. 2016) (finding that defendant had no standing to quash third-party subpoena where it did not show any personal right or privilege with respect to the materials subpoenaed). Accordingly, the Court finds that Plaintiff does not have standing to represent Sanyo's interests in opposition to Defendants' Motion to Unseal. Nevertheless, out of an abundance of caution to Sanyo's stated desire to maintain the confidentiality of certain information in the Summary Judgment Order, the Court finds it prudent to consider the redactions proposed by Plaintiff.

**(B)   Plaintiff Fails to Establish Good Cause for Maintaining the Confidentiality of Sanyo's Information**

Assuming, *arguendo*, Plaintiff can assert Sanyo's privacy and commercial interests, the Court alternatively finds that Plaintiff fails to establish "good cause" for its proposed redactions.

In its Summary Judgment Order, (doc. 355), the Court held that the claims of Plaintiff's patent, the '329 patent, describe a process that is identical to, or differs at most trivially from, a decades-old process, the "Sanyo SANWET® Process"—a process that was "known or used by others," 35 U.S.C. § 102(a) (1994), (id. at pp. 20–25), was "in public use," 35 U.S.C. § 102(b) (1994), (id. at pp. 27–29), and was "on sale," 35 U.S.C. § 102(b) (1994), (id. at pp. 29–31), long before January 31, 1995.  From the outset, Defendants have contended that the specific Sanyo information discussed in this Order should no longer be sealed, because it does not "describe any elements of the Sanyo SANWET® Process that could rightly be considered confidential or proprietary." (Doc. 367, p. 1.)  Plaintiff has only responded with generalized, boilerplate assertions of confidential business information or trade secrets.  (See Doc. 383, pp. 10–11; doc. 411; see also doc. 411-1.)  This meager showing falls well short of the type of evidence needed to overcome the public's right of access to this judicial record.  See Chicago Tribune Co., 263 F.3d at 1313–14 (requiring a showing, *inter alia*, "that the information represents substantial value to [Plaintiff], that it would be valuable to [Plaintiff's] competitors, and that it derives its value by virtue of the effort of its creation and lack of dissemination").  Moreover, Plaintiff offers no evidence that either it or Sanyo would face a "likelihood of injury if [the Order is] made public" or suffer any "harm [to] legitimate privacy interests."  Romero, 480 F.3d at 1246.

Turning to Plaintiff's proposed redactions, (doc. 411-2), Defendants contend that each of the quoted phrases already exist in the public domain, lack proprietary status, or both, (doc. 413, pp. 1–3).  Defendants offer evidentiary support for this claim.  (See Doc. 413-1.)  Plaintiff,

however, did not respond and failed to offer any evidence in the first instance.[15]  The Court has reviewed the redactions submitted by Plaintiff under seal, as well as Defendants' evidence and argument that Plaintiff lacks a legitimate claim to confidentiality, and finds that the proposed redactions do not warrant continued protection.  Plaintiff proposes redaction of the following statements from the Court's Summary Judgment Order, each of which has already been disclosed to some degree in a publication:

In the first proposed redaction, the Court states that the Sanyo SANWET® Process consists of "graft-polymerization . . . among Oxidized Starch, Acrylic Acid and Chemical A."  (Doc. 355, p. 12; see doc. 411-2, p. 12.)  This aspect, though, appears on Sanyo advertising.  Previously, in a May 1984 Technical Bulletin, publicly filed with the U.S. Patent and Trade Office, Sanyo stated that "SANWET IM-300 and SANWET IM-1000[,] developed for use as super absorbent polymers, are internally cross-linked starch-grafted-polyacrylates made from starch and acrylic acid." (Doc. 413-1, p. 6.)

In the second proposed redaction, the Court, in explaining that the polymerization occurs "in aqueous solution," clarified that meaning by adding the word "water" beside the phrase "in aqueous solution."  (Doc. 355, p. 12.)  Plaintiff seeks to redact the word "water."  (Doc. 411-2, p. 12.)  Aqueous, by definition, means: "of, relating to, or resembling water; made from, with, or by water."  Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/ aqueous (last visited July 2, 2019).  Plainly, this would be a baseless redaction.

---

[15]  Plaintiff's lack of response to these and other issues raised by Defendants regarding Sanyo's purported confidentiality interests highlights the need for the party to whom the information belongs, and matters, to represent its own interests.  The limitations on third-party standing are there precisely to ensure that the issues at stake are properly framed and sufficiently represented.  See Reservists Comm. to Stop the War, 418 U.S. at 220–21.

In the third proposed redaction, the Court states that the Sanyo SANWET® Process uses a "crosslinking agent." (Doc. 355, p. 13; see doc. 411-2, p. 13.) Here again, this aspect of Sanyo's process is stated on the face of the May 1984 Technical Bulletin. (See Doc. 413-1, p. 6 (explaining that SANWET super absorbent polymer is "internally cross-linked starch-grafted-polyacrylates made from starch and acrylic acid").)

In the fourth proposed redaction, the Court states that the Sanyo SANWET® Process employs "4,4-Azobis-4-Cyanovaleric Acid" as one of multiple polymerization initiators. (Doc. 355, p. 13; see doc. 411-2, p. 13.) Sanyo's use of this type of initiator was published in Japanese Patent Application No. JP S54-10387, entitled "Method of Manufacturing Water-Soluble Polymer Gel." (Doc. 207-30, pp. 2–3; see also doc. 207-1, pp. 21–24; doc. 355, p. 33.) This "Published Patent Application" explains that the Sanyo polymer uses "acrylic acid," "monomers . . . in an aqueous solution," and an "azobis cyanovaleric acid" initiator. (Doc. 207-30, pp. 3–4.) Although the particular azo initiators differ, Plaintiff has put forth no evidence or explanation as to why this difference is material for confidentiality or commercial purposes.

The fifth, and final, proposed redaction concerns the Court's listing of two specific nitrogen gas discharge pressures used in the Sanyo SANWET® Process—"5 to 5.5 kg/cm$^2$ which is equivalent to 4.9 to 5.4 bar" and "4.2 to 4.8 kg/cm$^2$"—and the inclusion of details, from a Sanyo schematic chart, about discharge speed and timing. (Doc. 355, pp. 13, 15, 16; see doc. 411-2, pp. 13, 15, 16.) Much of this information, however, was previously disclosed in a 1988 article appearing in the Chinese-language journal, *Fine Chemicals*. The article states that Sanyo's "production process of its factory in Nagoya is described as polymerization of medium-concentration aqueous solution . . . . After polymerization, the polymers are squeezed out in an atmosphere of 5 kg/cm$^2$ nitrogen, and are crushed in a device similar to a meat grinder."

(Doc. 239-10, p. 34.) Although this article does not discuss all of the information mentioned in the excerpted chart, Plaintiff fails to offer any specific evidence showing good cause to redact this already limited excerpt. Conclusory assertions of confidential interests are not enough to overcome the public's right of access. See, e.g., Nelson, 2014 WL 12617593, at *3–9 (unsealing non-party's information over its opposition because, *inter alia*, the claim to purported trade secrets was generalized and lacked supporting evidence).

Thus, because the proposed redactions largely comprise material that is already available to the public, they do not involve the type of confidential trade secrets that need to be shielded from public access on the Court's docket. This scenario is expressly contemplated within the Protective Order, which denies protection to "information that has been disclosed to the public or third persons in a manner making such information no longer confidential." (Doc. 39, p. 2.) Moreover, Plaintiff's failure to provide any particularized argument, or supporting evidence, substantiating Sanyo's purported confidentiality interests in the proposed redactions is akin to a failure to show "good cause" to keep the Summary Judgment Order sealed. There has been no articulation of any possible commercial harm that would befall Plaintiff or Sanyo should the Order be unsealed. Accordingly, the Court's Summary Judgment Order is due to be unsealed for the alternative, independent reason that Plaintiff does not show "good cause" to deny full public access to this judicial record.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Defendants' Motion for Leave to File Unredacted Version of Doc. No. 360-2 and to Unseal Doc. No. 355, (doc. 367), and **DENIES as moot** Plaintiff's Motion to Unseal ECF 355, (doc. 408). In addition, for the purposes of considering Defendants' Motion at bar, the Court **GRANTS** the parties' Motions to Seal their

briefing, (docs. 380, 394). Accordingly, the Court **DIRECTS** the Clerk of Court to **DOCKET** the Second Declaration of James W. Dabney, (doc. 369), and all attachments thereto which include Defendants' Motion for Attorneys' Fees and Expenses, (doc. 369-2), to **UNSEAL** the partially redacted version of Defendants' Motion, (doc. 360), and to **UNSEAL** the Summary Judgment Order, (doc. 355). The Court also **DIRECTS** the Clerk of Court to **DOCKET** and **SEAL** Plaintiff's unredacted Response in Opposition, (doc. 381), and Defendants' unredacted Reply in Support, (doc. 396).

      **SO ORDERED**, this 3rd day of July, 2019.

                                              _____

                                              R. STAN BAKER
                                              UNITED STATES DISTRICT JUDGE
                                              SOUTHERN DISTRICT OF GEORGIA