# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

BASF CORPORATION,

        Plaintiff,

    v.

SNF HOLDING COMPANY; FLOPAM INC.;
CHEMTALL INC.; SNF SAS; and SNF
(CHINA) FLOCCULANT CO., LTD,

        Defendants.

CIVIL ACTION NO.: 4:17-cv-251

## O R D E R

This matter comes before the Court regarding several Motions to Seal documents related to Defendants' pending Motion for Attorneys' Fees and Expenses, (doc. 360). (See Docs. 368, 373, 379, 388, 393.) The Motions to Seal are unopposed. Also before the Court is Plaintiff's Motion to Defer Determination of Costs and Response in Opposition to Defendants' Bill of Costs, (doc. 391), to which Defendants filed a Reply, (doc. 401).

For the reasons set forth below, the Court **DENIES without prejudice**: Plaintiff's Motion to Seal Opposition to Defendants' Motion for Attorneys' Fees and Expenses, (doc. 368); Defendants' Motion to Seal Reply in Support of Defendants' Motion for Attorneys' Fees and Expenses, (doc. 379); Plaintiff's Motion to Seal BASF's Surreply in Opposition to Defendants' Motion for Attorneys' Fees and Expenses, (doc. 393); Defendants' Motion to Seal Declarations Supporting Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs, (doc. 373); and **DENIES as moot** Plaintiff's Motion to Seal BASF Corp.'s Motion Pursuant to Federal Rule of Civil Procedure 54(d)(2)(C) for Adversary

Submissions Regarding Defendants' Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs, (doc. 388). The Court **DIRECTS** the Clerk of Court to return the materials sought to be sealed, (<u>see</u> docs. 370, 374, 384, 389, 395), to the submitting parties, Local R. 79.7(c).

The Court, however, **GRANTS** Plaintiff's Motion to Defer Determination of Costs, (doc. 391), and declines to adjudicate Defendants' Motion for Attorney's Fees and Expenses and Bill of Costs, (docs. 360, 375), during the pendency of Plaintiff's appeal before the Federal Circuit Court of Appeals. As such, the Court **DENIES without prejudice to refile**: Defendants' Motion for Attorneys' Fees and Expenses, (doc. 360); Defendants' Bill of Costs, (doc. 375); Defendants' Request for Hearing, (doc. 361); and Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 54(d)(2)(C) for Adversary Submissions Regarding Defendants' Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs, (doc. 390). The Court **DIRECTS** the parties to, if appropriate, refile these Motions and the Bill of Costs **within twenty-one (21) days** of the date that the Federal Circuit Court of Appeals issues its mandate on the pending appeal.[1] Responsive briefing will be due **within fourteen (14) days** of service of the respective motions and bill of costs, as set forth in Local Rules 7.5 and 7.6. Pursuant to Local Rule 54.2(c), should Defendants remain the prevailing parties post-appeal and should they still seek attorney's fees, they shall file and serve their detailed specification and itemization of the requested attorney's fees award **within twenty-one (21) days** of the date that the Federal Circuit issues its mandate.

---

[1] The parties are, of course, free to refile these documents with supplemental argument based on developments before the Federal Circuit or in response to any other relevant subsequent event. Additionally, if following the Federal Circuit's mandate the parties no longer seek the relief requested in these pleadings, they are not required to file the pleadings.

In so filing these documents, the parties are advised that any request to seal or redact information contained therein must account for the Court's findings in this Order and those in the Order dated July 3, 2019, (doc. 414). Specifically, the parties must not move to file under seal any information or documents already found by the Court to not warrant sealing, and they must narrowly tailor any information relevant to attorneys' fees and costs that they still seek to have sealed. If the parties seek to seal such content, they must offer particularized reasons as to why the specific information or documents require sealing. As is made clear below, conclusory and blanket assertions of confidentiality will not establish the requisite cause to seal. If, upon reflection, the parties determine that these filings no longer need to be sealed, they may submit them in the normal course. Local R. 79.7(c).

## BACKGROUND

On October 4, 2018, the Court entered summary judgment in favor of Defendants, invalidating Plaintiff's patent that was the subject of this infringement action. (Doc. 355.) The Summary Judgment Order, containing quoted and excerpted discovery material covered by the Protective Order, was initially sealed but has since been unsealed based on the Court's finding that Plaintiff failed to show "good cause" to keep it shielded from the public's presumed right of access to judicial records. (Doc. 414, pp. 18–26.) Additionally, the Court unsealed and docketed the unredacted version of Defendants' Motion for Attorneys' Fees and Expenses, because Plaintiff did not show "good cause" to keep the limited discovery material contained therein protected from public viewing. (Id. at pp. 12–18.)

As is pertinent to the Motions to Seal at bar, in unsealing Defendants' unredacted Motion for Attorneys' Fees and Expenses, the Court found there was no cause to suppress Plaintiff's statement that "prior to the invention of the '329 patent, conical tapers and inert gas had never

been used to remove the claimed polymer gels from reactors," (doc. 416-1, p. 8 (citing doc. 198-8, p. 59); and the Court found no cause to suppress a non-party's statement that "polymerization reactors do <u>not</u> require periodic cleaning. The polymer batches discharge completely with no residual build-up on the inside of the reactors," (<u>id.</u> at p. 20 (citing doc. 343-2, p. 2)). (<u>See</u> Doc. 414, pp. 12–18.) This information—contained within Defendants' Motion for Attorneys' Fees and Expenses—is now publicly available on the Court's CM/ECF docketing system.

Following the entry of summary judgment, Plaintiff appealed to the Federal Circuit Court of Appeals, (doc. 362), while Defendants filed the Motion for Attorneys' Fees and Expenses that is the root of the motions presently under consideration, (doc. 360). Plaintiff's appeal of summary judgment in this case prompted the Court to stay proceedings in a related case brought by Defendant Chemtall Inc. against Plaintiff BASF Corporation. Order, <u>Chemtall Incorporated v. BASF SE</u>, 4:17-cv-186 (S.D. Ga. Jan. 7, 2019), ECF No. 259. The Court stayed that case pending Plaintiff's appeal in this case. <u>Id.</u> at 9–14. In that case, Defendant Chemtall Inc. claims Plaintiff fraudulently concealed its ownership of the Sanyo SANWET® Process (at times, the "Process") in order to make its patent infringement action here cognizable. <u>Id.</u> at 3. Pertinently, in this case, the Court invalidated Plaintiff's '329 patent based on its determination that the Process constituted prior art. (Doc. 355.) Given the dependency of Defendant Chemtall Inc.'s related claims on the Court's prior art finding, the Court found it prudent to stay that case pending the outcome of Plaintiff's appeal in this case. Order, pp. 9–14, <u>Chemtall Incorporated v. BASF SE</u>, 4:17-cv-186 (S.D. Ga. Jan. 7, 2019), ECF No. 259.

In responding to the substance of Defendants' Motion for Attorneys' Fees and Expenses, Plaintiff filed a redacted Opposition brief, (doc. 371), and a Motion to Seal an unredacted version of the Opposition brief, (doc. 368). Defendants filed a redacted Reply in Support, (doc. 382), and

a Motion to Seal an unredacted version of the Reply in Support, (doc. 379). Plaintiff then filed a redacted Surreply in Opposition, (doc. 398), and a Motion to Seal an unredacted version of the Surreply in Opposition, (doc. 393). In addition, Defendants filed a Motion to Seal Declarations Supporting Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs, (doc. 373), as well as a Bill of Costs, (doc. 375). Plaintiff filed a Motion to Defer Determination of Costs and Response in Opposition to Defendants' Bill of Costs, (doc. 391), to which Defendants replied, (doc. 401). Relatedly, Plaintiff filed a redacted Motion Pursuant to Federal Rule of Civil Procedure 54(d)(2)(C) for Adversary Submissions Regarding Defendants' Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs, (doc. 390), and a Motion to Seal an unredacted version of the same, (doc. 388).[2] Defendants filed a Memorandum in Opposition to Plaintiff's request for adversary submissions, (doc. 400), and Plaintiff filed a Reply in Support, (doc. 403).

While the parties have opposed the substance of and relief sought by these various filings, they have not filed any opposition to the sealing of their contents. With this background in mind, the Court takes up, in turn, the parties' present Motions to Seal as well as Plaintiff's Motion to Defer. (Docs. 368, 373, 379, 388, 391, 393.)

## DISCUSSION

### I.     Plaintiff's and Defendants' Motions to Seal (Docs. 368, 373, 379, 388, 393)

The right of access to judicial records pursuant to common law is well-established. See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); see also Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992). This right extends to the inspection and the copying

---

[2] Pursuant to Local Rule 79.7 and the Court's Administrative Procedures for Electronic Filing, the parties manually filed with the Clerk of Court unredacted, paper versions of the documents sought to be sealed. (See Docs. 370, 374, 384, 389, 395.)

of court records and documents. See Nixon, 435 U.S. at 597. The right to access, however, is not absolute. See Globe Newspaper Co. v. Superior Court for Norfolk Cty., 457 U.S. 596, 598 (1982). When deciding whether to grant a party's motion to seal, the court is required to balance the historical presumption of access against any significant interests raised by the party seeking to file under seal. See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001); Newman v. Graddick, 696 F.2d 796, 803 (11th Cir. 1983). In balancing the interests, courts consider, among other things:

> whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

Romero v. Drummond Co., Inc., 480 F.3d 1234, 1246 (11th Cir. 2007). When the designated confidential information concerns asserted trade secrets, courts must examine whether: 1) the party seeking protection has consistently treated the information as closely guarded secrets; 2) the information represents substantial value to that party; 3) the information would be valuable to the party's competitors; and 4) the information derives its value by virtue of the effort of its creation and lack of dissemination. Chicago Tribune Co., 263 F.3d at 1313–14.

"A party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information." Romero, 480 F.3d at 1246 (citing Nixon, 435 U.S. at 598). Moreover, the common-law right of access to judicial proceedings does not extend to discovery documents or discovery disputes, "as these materials are neither public documents nor judicial records." Chicago Tribune Co., 263 F.3d at 1311. However, discovery material submitted in conjunction with substantive motions that are "presented to the court to invoke its powers or affect its decisions" is subject to the public right of access, regardless of whether the motion is

dispositive or not.  <u>Romero</u>, 480 F.3d at 1245–46 (citations omitted); <u>see also</u> <u>FTC v. AbbVie</u>

<u>Prods. LLC</u>, 713 F.3d 54, 62–64 (11th Cir. 2013) (discussing what legal document filings

constitute judicial records).

Though a stipulated protective order may provide that documents designated confidential

are presumptively protected, a party's calling a document confidential pursuant to a protective

order "does not make it so" when it comes to filing the document with the Court.  <u>Estate of Martin</u>

<u>Luther King, Jr., Inc. v. CBS, Inc.</u>, 184 F. Supp. 2d 1353, 1362 (N.D. Ga. 2002).  "[C]onsensual

protective orders merely delay the inevitable moment when the court will be called upon to

determine whether Rule 26(c) protection is deserved, a decision ultimately rooted in whether the

proponent demonstrates 'good cause.'"  <u>Id.</u>  Even when, as in this case, the motion to seal is

presented without any challenge from the litigants, the judge remains "the primary representative

of the public interest in the judicial process and is duty-bound therefore to review any request to

seal the record (or part of it).  He may not rubber stamp a stipulation to seal the record.'"  <u>Id.</u> at

1363 (quoting <u>Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.</u>, 178 F.3d 943, 945 (7th

Cir. 1999)).  "Once a matter is brought before a court for resolution, it is no longer solely the

parties' case, but also the public's case."  <u>Brown</u>, 960 F.2d at 1016.  Whether to seal such a matter

is a decision "left to the sound discretion of the trial court."  <u>Nixon</u>, 435 U.S. at 599.

A.    **Plaintiff's Motion to Seal Opposition to Defendants' Motion for Attorneys'
Fees and Expenses (Doc. 368)**

Plaintiff contends its unredacted Opposition brief should be sealed "because it contains

proprietary, confidential business information and/or trade secrets designated confidential"

pursuant to the Protective Order.  (Doc. 368, p. 1.)  Plaintiff also notes that certain, unspecified

exhibits contain information that should also be sealed.  (<u>Id.</u>)  Plaintiff shows that other motions

have been filed under seal and asserts that permanently sealing its unredacted Opposition brief "is

essential to protect confidential and proprietary business information designated as such by BASF, Defendants, and other third parties." (Id. at p. 2.)

The Court has compared, *in camera*, the redacted content in Plaintiff's publicly-filed Opposition brief, (doc. 371), to the unredacted, manually filed version, (doc. 370), and finds that many of the redactions are overbroad and lack a discernable connection to proprietary business information.[3] For example, Plaintiff redacts legal and factual positions that it and Defendants advanced before the Patent and Trademark Officer during *inter partes* review, a public proceeding. (See Doc. 371, pp. 7–8, 20.) It also seeks to redact the amount Defendants paid its expert, Mr. Fowler, (see id. at pp. 8–9), and common information about his background, (see id. at p. 23). Along these same lines, Plaintiff seeks to redact generic factual contentions that have little, if any, observable connection to technical, proprietary business information, (see id. at pp. 1, 14–17, 20–21, 25 n.14.)[4] Plaintiff also seeks to redact the titles and record citations of certain documents, (see id. at pp. 11–12). In fact, Plaintiff proposes that the Court redact every record citation of the information it argues should be confidential, (see id.).

What is more, some of the redacted content that actually pertains to proprietary business information, (see id. at pp. 6–8), is now publicly available via the Court's Summary Judgment Order, (see doc. 355, pp. 18–20 (discussing whether leaving a polymer gel heel in the reactor

---

[3] Because Plaintiff did not specify which of its forty-five (45) exhibits contained redactions and information allegedly worthy of sealing, the Court limited its review to only the publicly-filed, redacted content in Plaintiff's Opposition brief, (doc. 371). Should Plaintiff again seek to have this information sealed, it must specifically identify the relevant exhibits and information and explain, consistent with controlling law, why that content should be shielded from the public's presumed right of access.

[4] To offer an illustration, some of this information concerns a 1985 license agreement pertinent to the Sanyo SANWET® Process and when certain individuals or entities later learned about the Process. (Doc. 371, pp. 14, 20–21.) On its face, this content, which consists only of surface level descriptions, hardly constitutes the type of proprietary business information worthy of an order to seal. Cf. Shane Grp., Inc. v. Blue Cross Blue Shield, 825 F.3d 299, 309 (6th Cir. 2016) ("[T]he particulars of years-ago negotiations are unlikely to amount to a trade secret.")

places the Sanyo SANWET® Process outside the meaning of the '329 patent claim language)). When seeking partial redaction of this Order, Plaintiff did not argue that information regarding polymerized gel "heels" left in the bottom of reactors warranted sealing, (see docs. 411, 411-2).

Given the pervasive disconnect between Plaintiff's purported reason for sealing its Opposition brief—that it contains proprietary, technical trade secrets—and much of what is sought to be shielded from public view—content that does not concern this avowed business rationale— Plaintiff has not shown "good cause" to seal this judicial record. Critically, what Plaintiff seeks to seal is not only the underlying discovery but the Opposition brief itself. This document, unlike the discovery it discusses, is presumptively a judicial record subject to the public's presumed right of access. See Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC, 918 F.3d 1161, 1167 (11th Cir. 2019) ("[M]aterials submitted by litigants . . . that are 'integral to the judicial resolution of the merits' in any action taken by that court are subject to the common law right of access and the necessary balancing of interests that the right entails." (citation omitted)). Plaintiff's Opposition brief, like Defendants' Motion for Attorneys' Fees and Expenses, is a document that is central to the substance of this case and "invoke[s] judicial resolution of the merits." AbbVie Prods., LLC, 713 F.3d at 63. Moreover, the exhibits attached to this brief are also subject to the common-law right of access. See Advance Local Media, LLC, 918 F.3d at 1166–67 (exhibits attached to a complaint and discovery material attached to motions subject to public access).[5]

---

[5] "Obviously briefs filed in support of or in opposition to dispositive motions, as well as the exhibits attached thereto, are also 'judicial records' subject to the common-law right of access." Brown v. City of Prattville, Ala., No. 2:09-CV-918-MEF, 2011 WL 231148, at *1 n.1 (M.D. Ala. Jan. 24, 2011); see also Wi-LAN USA, Inc. v. Telefonaktiebolaget TM Ericsson & Ericsson Inc., No. 12-23569-CV, 2015 WL 12976849, at *3 (S.D. Fla. Apr. 17, 2015) (denying motion to seal response to summary judgment). The Eleventh Circuit has held that the public's right of access attaches to a motion "whether or not [it is] characterized as dispositive." Romero, 480 F.3d at 1246 (citations omitted). Accordingly, these briefs and their exhibits are plainly subject to the common-law right of access.

While it is true that materials containing proprietary or trade secret information may be permissibly filed under seal, e.g. Corbett v. Transportation Security Administration, 767 F.3d 1171, 1183 (11th Cir. 2014) (sealing operations manual for advanced imaging scanner because it expressly prohibited disclosure and required written permission for reproduction), the party seeking to have such material sealed must explain why it should be sealed. In Corbett, a case cited by Plaintiff, (doc. 368, pp. 1–2), the operations manual was specifically sealed due to the seller's express limitations on making its content public and not simply because it was copyrighted or labeled proprietary, see 767 F.3d at 1176, 1183. In Reid v. Viacom International Inc., another case cited by Plaintiff, the court sealed several exhibits or portions of exhibits filed in conjunction with the defendant's summary judgment motion. No. 1:14-CV-1252-MHC, 2016 WL 4157208, at *2– 7 (N.D. Ga. Jan. 25, 2016). As is indicated by its analysis, the Reid court was willing to grant the motions to seal in large part because the parties had provided particularized reasons as to why specific information contained in supporting exhibits warranted sealing. Id. Even so, the Reid court scrutinized this reasoning and did not seal every exhibit at issue. Id. at *2–3, *6. Furthermore, the summary judgment motion and the response thereto were neither sealed nor redacted. See Mot. & Resp., Reid v. Viacom International Inc., 1:14-cv-1251 (N.D. Ga. Sep. 9 & Oct. 29, 2015), ECF Nos. 100, 108.

Here, unlike the parties in Reid and Corbett, Plaintiff has offered only blanket assertions of confidentiality, and it does not bother to explain, with any degree of specificity, why sealing the content related to the many redactions in its brief is warranted. "[S]tereotyped and conclusory statements [] do not establish good cause" to seal. Romero, 480 F.3d at 1247 (citations omitted and internal quotations omitted). To be sure, some of the redacted content in Plaintiff's publicly-filed brief, (doc. 371), which is sought to be filed under seal without redaction by this Motion,

does appear to qualify for trade secret protection. But Plaintiff neither offers specific argument nor endeavors to delineate information that ostensibly constitutes trade secrets from information that facially does not. By proceeding in this generalized manner, Plaintiff has failed to show possible harm to legitimate privacy interests, <u>Romero</u>, 480 F.3d at 1246, and failed to establish that the information it seeks to redact actually constitutes proprietary trade secrets, <u>Chicago Tribune Co.</u>, 263 F.3d at 1313–14.

In other words, Plaintiff does not show "good cause" to seal its Opposition brief. <u>See Nielson v. Portfolio Recovery Assocs., LLC</u>, No. CV 2:18-1610-RMG, 2019 WL 2513722, at *2–5 (D.S.C. June 18, 2019) (denying conclusory motion to seal that sought sealing of purported sensitive business information but did not substantiate its status as such); <u>Pledger v. Reliance Tr. Co.</u>, No. 1:15-CV-4444-MHC, 2019 U.S. Dist. LEXIS 45668, at *66–67 (N.D. Ga. Feb. 25, 2019) (denying motion to seal where movant did not address factors governing whether to seal reflected in case law and relied solely on the material's confidentiality designation under a joint protective order); <u>United States v. Lee Mem'l Health Sys.</u>, No. 2:14-CV-437-FTM-38CM, 2018 WL 4492271, at *4–8 (M.D. Fla. Sept. 19, 2018) (denying without prejudice motion to seal because it was not supported by detailed description of the information to be sealed, including purported trade secrets, and the reasons why each piece of information should be sealed); <u>In re McCormick & Co., Pepper Prods. Mktg. & Sales Practices Litig.</u>, 316 F. Supp. 3d 455, 467–71 (D.D.C. 2018) (denying motions to seal and requiring movants to submit narrowly tailored, specifically supported redactions of the documents sought to be sealed); <u>Nelson v. Nissan N. Am., Inc.</u>, No. CV 11-5712 (JEI/AMD), 2014 WL 12617593, at *4–8 (D.N.J. Dec. 22, 2014) (denying motion to seal where movant, relying on general allegations, failed to establish that the documents it wanted sealed actually contained trade secrets); <u>see also Pfizer, Inc. v. Teva Pharm. USA, Inc.</u>, No. CIV.A. 08-

1331 (DMC), 2010 WL 2710566, at *5–6 (D.N.J. July 7, 2010) (denying motion to redact transcript where the requests to seal were "not supported by a brief or particularized argument," were "overbroad and only supported by general allegations of harm," and left "unexplained how the disclosure of this type of information could result in a specific and serious injury").

Accordingly, the Court **DENIES without prejudice** Plaintiff's Motion to Seal Opposition to Defendants' Motion for Attorneys' Fees and Expenses. (Doc. 368) As it stands, the Court can only consider the redacted version of Plaintiff's Opposition brief and attached exhibits. (Doc. 371.) If Plaintiff wants the Court to substantively consider the unredacted version of its Opposition brief, Plaintiff must first file a more narrowly tailored *redacted* version—consistent with this Order and the Court's July 3, 2019 Order, (doc. 414)—and then file a properly-supported Motion to Seal the unredacted version, offering particularized reasons why the specific information that has been redacted from the publicly-filed version warrants the sealed filing of an unredacted version. These instructions apply with equal force to any currently redacted exhibits attached to Plaintiff's Opposition brief.

### B.    Defendants' Motion to Seal Reply in Support of Defendants' Motion for Attorneys' Fees and Expenses (Doc. 379)

Defendants contend their Reply in Support should be sealed for three reasons. (Doc. 379, pp. 1–2.) First, the Reply quotes portions of the Court's previously sealed Summary Judgment Order; second, the Reply quotes portions of Plaintiff's redacted Opposition brief; and third, the Reply quotes from materials designated by Plaintiff as highly confidential under the Protective Order. (Id.) As to this third category, Defendants note that one of the documents they quote from is Plaintiff's interrogatory response, the content of which is similar to a public assertion Plaintiff previously made to the Patent and Trademark Office. (Id. at p. 2.)

The Court has considered Defendants' Motion and compared, *in camera*, the redacted content in the publicly-filed version of the Reply in Support, (doc. 382), to the unredacted, manually-filed version, (doc. 384), and finds that a great deal of the redactions do not involve information which could be rightly considered trade secrets. For example, Defendants redact deposition testimony that concerns the extent to which Plaintiff's Rule 30(b)(6) designee prepared for her deposition and the steps Plaintiff took to unearth certain discovery materials. (See Doc. 382, pp. 9–11.) Although this deposition transcript was covered by the parties' Protective Order, this particular area of testimony does not relay any information that facially warrants sealing. Moreover, the existence of a stipulated protective order is largely irrelevant to whether certain documents or information actually warrant sealing when filed as a judicial record. These types of protective orders "merely delay the inevitable moment when the court will be called upon to determine whether Rule 26(c) protection is deserved, a decision ultimately rooted in whether the proponent demonstrates 'good cause.'" Estate of Martin Luther King, Jr., Inc., 184 F. Supp. 2d at 1362. Here, the existence and applicability of the Protective Order alone is not good cause to seal Defendants' Reply in Support.

Furthermore, given that the Court has now unsealed its Summary Judgment Order as well as Defendants' Motion for Attorneys' Fees and Expenses, (doc. 414), some of Defendants' stated reasons for redacting and seeking sealed protection of certain content in its Reply have become moot. For instance, the Court has already found Plaintiff's interrogatory response—that "prior to the invention of the '329 patent, conical tapers and inert gas had never been used to remove the claimed polymer gels from reactors," (doc. 207-31, p. 29)—should not be sealed. (Doc. 414, pp. 14–16.) Further, the Court has entirely unsealed its Summary Judgment Order, (id. at pp. 18–

26), and Defendants' underlying Motion for Attorneys' Fees and Expenses, (id. at pp. 12–18). As such, Defendants' proffered reasons do not supply "good cause" to seal their Reply in Support.

However, like with Plaintiff's Opposition brief, some of the redacted content in Defendants' Reply in Support may discuss actual trade secrets or other proprietary business information that warrants sealing. Nevertheless, given the lack of detailed argument addressing the specific redactions in Defendants' Motion, the Court cannot determine what portions of this information should remain publicly-redacted and be filed under seal without redaction. There being no particularized reasons to seal otherwise shown, the Court finds that Defendants have not shown "good cause" to seal their Reply in Support.

Accordingly, the Court **DENIES without prejudice** Defendants' Motion to Seal Reply in Support of Defendants' Motion for Attorneys' Fees and Expenses. (Doc. 379.) As it stands, the Court can only consider the redacted version of their Reply in Support. (Doc. 382.) If Defendants want the Court to substantively consider the unredacted version of their Reply in Support, Defendants must first file a more narrowly tailored *redacted* version—consistent with this Order and the Court's July 3, 2019 Order, (doc. 414)—and then file a properly-supported Motion to Seal the unredacted version, offering particularized reasons why the specific information that has been redacted from the publicly-filed version warrants the sealed filing of an unredacted version.

C.    **Plaintiff's Motion to Seal BASF's Surreply in Opposition to Defendants' Motion for Attorneys' Fees and Expenses (Doc. 393)**

Plaintiff's Motion to Seal its Surreply in Opposition essentially parrots Plaintiff's already-discussed Motion to Seal its Opposition brief. (Compare Doc. 368, with doc. 393.) The only discernable textual difference is that Plaintiff replaced the sentence, "This is unsurprising for a patent litigation between marketplace competitors dealing with complex chemical and physical processes," (doc. 368, p. 1), with the sentence, "Some of that information describes confidential

and proprietary chemical processes," (doc. 393, pp. 1–2). Additionally, Plaintiff notes that, by this Motion, it only seeks to seal the Surreply in Opposition itself and not any of the accompanying exhibits. (Id. at p. 1 n.1.)

As done previously, the Court has compared, *in camera*, the redacted content in Plaintiff's publicly-filed Surreply in Support, (doc. 398), to the unredacted, manually-filed version, (doc. 395), and again finds that many of the redactions are overbroad, without a discernable connection to proprietary business information. By way of example, Plaintiff redacts historical information about when the use of the Sanyo SANWET® Process began, (doc. 398, pp. 8–9); discussion and quotation of a publicly-filed patent claim construction order, (id. at p. 10; see doc. 122, p. 18); non-technical deposition testimony, (doc. 398, p. 16); the month and year in which Defendant SNF Holding Company ("SNF") allegedly became aware of the Sanyo SANWET® Process, (id. at p. 21); and the year in which Defendant SNF allegedly first knew about its expert witness, (id. at p. 22).

It is possible that this seemingly innocuous information has true trade secret value, but such a determination is made impossible by Plaintiff's conclusory Motion to Seal, (see doc. 393). Some of the other redactions not mentioned here, moreover, might deserve to be sealed. Nonetheless, given the lack of particularized discussion and the redaction of facially non-proprietary information, Plaintiff has not shown "good cause" to seal its Surreply in Opposition. Thus, the Court **DENIES without prejudice** Plaintiff's Motion to Seal this filing. (Doc. 393.)

As it stands, the Court can only consider Plaintiff's redacted version of its Surreply in Opposition. (Doc. 398.) If Plaintiff wants the Court to substantively consider the unredacted version of its Surreply, Plaintiff must first file a more narrowly tailored *redacted* version—consistent with this Order and the Court's July 3, 2019 Order, (doc. 414)—and then file a properly

supported Motion to Seal the unredacted version, offering particularized reasons why the specific information that has been redacted from the publicly-filed version warrants the sealed filing of an unredacted version.

### D. Defendants' Motion to Seal Declarations Supporting Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs (Doc. 373)

In support of this Motion to Seal, Defendants state that the declarations "disclose attorney rates and fees paid by [them] in connection with the defense of [this] action." (Doc. 373, p. 1.) Defendants argue these billing rates, "and the data from which these rates were calculated," constitute confidential commercial information under the Protective Order. (Id.) If publicly known, Defendants contend, these rates "would provide a competitive commercial advantage to competitors of Defendants' attorneys and would compromise trade secrets of data compilation companies, including at least Price Waterhouse Coopers." (Id.) Defendants manually submitted these declarations, (doc. 374), but did not publicly file redacted versions of them. As such, the Court has conducted an *in camera* review of Defendants' declarations and analyzes their request to seal as follows.

To begin, many of the documents Defendants seek to seal here do not align with their stated reasons, *i.e.* Defendants seek to seal documents that do not reveal billing rates or data compilation trade secrets. This material includes: the Declaration of James R. Carlson, Defendant SNF's Senior Vice President, who avers that SNF has remitted payment for legal services and includes a spreadsheet showing specific invoices paid to expert witnesses and law firms without indicating any rates; and the Third Declaration of James W. Dabney, lead counsel for Defendants, who, while disclosing billing rate information, also includes information readily available to the public, such as his professional background, his firm profile page, his professor profile page, and news articles

about his past distinguished work. (See id.) Defendants also seek to seal Mr. Dabney's bar admissions as well as the firm profile pages of several partners and associates at his firm. (See id.)

Regarding the data from Price Waterhouse Coopers, Defendants seek to seal a BRASS$^{plus}$ Revenue Management Report, (see id.), an annual survey of billing rates for law firm partners and associates in which "nearly 75% of the largest, most profitable law firms" participate. See Price Waterhouse Coopers, Billing Rate & Associate Salary Survey$^{plus}$ (BRASS$^{plus}$), https://www.pwc.com/us/en/industries/law-firms/surveys/brass-survey.html (last visited July 18, 2019). Although participating firms receive this survey, it is not available to the public. See id. Defendants, however, also include two editions of the American Intellectual Property Law Association's ("AIPLA") biennial Report of the Economic Survey, (see doc. 374), which are available to the public for purchase, see AIPLA, The Report of the Economic Survey, https://www.aipla.org/home/news-publications/economic-survey (last visited July 18, 2019). The rest of the filings Defendants seek to have sealed consist of: a copy of the docket in this case, deposition notices, and two additional attorney declarations—from Lee L. Kaplan and James W. Brady Jr.—both of which contain, *inter alia*, professional-biographical information that is irrelevant to any possible trade secret concerns. (See Doc. 374.)

As this review reveals, Defendants seek to seal a considerable amount of information that is either unrelated to attorney billing rates, already publicly available, or both. Even accepting Defendants' premise, there is no "good cause" to seal such information. Turning to the attorney billing rates and related summary of paid invoices, the Court notes that Defendants provide no legal authority in support of their Motion to Seal this information. (See Doc. 373.) While they invoke the stipulated Protective Order, (doc. 39), in this Court, a litigant's confidentiality designation under a protective order does not automatically make it so when it comes to filing the

document on the Court's docket. <u>See</u> Local R. 79.7 ("Any person desiring to have any matter placed under seal shall present a motion setting forth the grounds why the matter presented should not be available for public inspection.").

Moreover, courts have found "that a purported concern over the public filing of counsel's hourly rates is not a sound legal basis to seal." <u>Procaps S.A. v. Patheon Inc.</u>, No. 12-24356-CIV, 2013 WL 5928586, at *3 (S.D. Fla. Nov. 1, 2013). "Attorney[s'] hourly rates are *routinely* public[ly] disclosed and discussed in judicial opinions at all levels." <u>Id.</u> at *4 (emphasis in original) (collecting cases). This principle remains true in patent litigation. <u>See, e.g.</u>, <u>Envtl. Mfg. Sols., LLC v. Peach State Labs, Inc.</u>, 274 F. Supp. 3d 1298, 1320 (M.D. Fla. 2017) (discussing specific partner and associate hourly rates in patent infringement action); <u>Shipping & Transit, LLC v. LensDiscounters.com</u>, No. 16-80980-CIV, 2017 WL 5434581, at *7 (S.D. Fla. July 11, 2017) (same); <u>Kilopass Tech., Inc. v. Sidense Corp.</u>, 82 F. Supp. 3d 1154, 1171 (N.D. Cal. 2015) (same).[6]

Case law even reveals the hourly rates of attorneys working for the subject law firm. "[T]he standard hourly rate charged in 2011 by the well-known law firm of Hughes Hubbard & Reed in New York City ranged from $625 to $990 for partners, and from $270 to $695 for associates." <u>Ceglia v. Zuckerberg</u>, No. 10-CV-00569A(F), 2012 WL 503810, at *15 (W.D.N.Y. Feb. 14, 2012); <u>see also</u> Decl., <u>EVEMeta, LLC v. Siemens Convergence Creators Holding GmbH</u>, 2:17-cv-6246 (C.D. Cal. Sept. 22, 2017), ECF No. 52-1, p. 2 (declaration of Hughes Hubbard & Reed partner

---

[6] To be sure, courts in some cases have found that counsel's hourly rates are "competitively sensitive" and have therefore allowed fee-request information to be sealed. <u>See, e.g.</u>, <u>In re Anthem, Inc. Data Breach Litig.</u>, No. 15-MD-02617-LHK, 2018 WL 3067783, at *2 (N.D. Cal. Mar. 16, 2018) (sealing specific hourly rates, but not the aggregate fee amounts, due to possible impairment of the attorneys' bargaining power). This, however, is the minority position. <u>Procaps S.A.</u>, 2013 WL 5928586, at *5. Furthermore, as explained in <u>Procaps S.A.</u>, attorney hourly billing rates "are frequently discussed in public and written about in the legal media" and are generally always disclosed in connection with attorneys' fees motions. <u>Id.</u> at *5–6. Finally, disclosure of hourly rates when seeking attorneys' fees is commonplace in the Southern District of Georgia. <u>See, e.g.</u> <u>Whitesell Corp. v. Electrolux Home Prods., Inc.</u>, No. CV 103-050, 2019 WL 1714131, at *3–4 (S.D. Ga. Apr. 17, 2019).

disclosing hourly rate of $950); <u>Banco Cent. Del Paraguay v. Paraguay Humanitarian Found., Inc.</u>, No. 01 CIV. 9649 (JFK), 2007 WL 747814, at *2 (S.D.N.Y. Mar. 12, 2007) (finding reasonable Hughes Hubbard & Reed's partner hourly rate of $700 and associate hourly rates of $485 and $280).

What is more, in this case, Defendants have previously filed—unsealed and unredacted— documents disclosing Mr. James W. Dabney's $1,250 per hour billing rate. (Doc. 416-1, p. 21; <u>see also</u> docs. 360-2, 367.) The Court cannot discern a logical basis to permit Defendants to seal attorney rate information for its law firm here when such information is already publicly available, both on this Court's docket and elsewhere. Absent a particularized reason to seal specific hourly rates, which Defendants do not offer, the Court cannot find "good cause" to blanket seal the rate information discussed in the declarations and exhibits supporting Defendants' Local Rule 54.2(c) statement.[7] Simply stating that a competitive commercial disadvantage would result, (doc. 373, p. 1), does not suffice.

Accordingly, for the foregoing reasons, the Court **DENIES without prejudice** Defendants' Motion to Seal Declarations Supporting Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs. (Doc. 373.) The Court denies this Motion without prejudice so that Defendants may, if they wish, seek to have some of the declaration contents not already discussed herein sealed.[8] However, Defendants shall

---

[7] Information concerning attorneys' fees is generally not privileged. <u>O'Neal v. U.S.</u>, 258 F.3d 1265, 1276 (11th Cir. 2001) (citations omitted). Further, it is doubtful that a substantiation of legal fees "will reveal confidential information." <u>Id.</u>

[8] In so stating, the Court expresses no opinion as to whether any such content is actually worthy of seal. Indeed, the Court has made clear that much of the documentation Defendants requested to be sealed by this Motion does not need to be protected from public access. If Defendants file a subsequent motion to seal the requisite Local Rule 54.2(c) itemization and specification, they are advised to narrowly tailor the content sought to be sealed and to offer particularized reasoning why specific exhibits or statements therein should be sealed.

not seek to file under seal information which is already public (*e.g.* attorney profile pages), or which does not generally warrant sealing (*e.g.* attorney billing rates).  Furthermore, to the extent the hourly rate reports from Price Waterhouse Coopers and the AIPLA actually disclose data compilation trade secrets, Defendants may submit appropriate excerpts of these documents; they need not be submitted in full to support Defendants' contentions.

Any subsequent motion to seal these declarations and accompanying exhibits must account for, and be consistent with, this Order and the Court's July 3, 2019 Order, (doc. 414).  Pursuant to Local Rule 54.2(c), should Defendants remain the prevailing parties following Plaintiff's appeal before the Federal Circuit, the Court **extends** the time for them to file their detailed specification and itemization of their requested attorney's fees award for **twenty-one (21) days** from the date the Federal Circuit issues its mandate.

> **E.** **Plaintiff's Motion to Seal BASF Corp.'s Motion Pursuant to Federal Rule of Civil Procedure 54(d)(2)(C) for Adversary Submissions Regarding Defendants' Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs (Doc. 388)**

Plaintiff seeks to file under seal its Federal Rule of Civil Procedure 54(d)(2)(C) Motion as it discusses Defendants' lawyers practices that Defendants designated confidential and which was provided under the stipulated Protective Order.  (Doc. 388, pp. 1–2.)  Plaintiff publicly filed a redacted copy of its Rule 54(d)(2)(C) Motion.  (Doc. 390.)  The Court has compared, *in camera*, this redacted version to the unredacted, manually-filed version, (doc. 389), and finds that Plaintiff only seeks to seal content found in Defendants' Local Rule 54.2(c) declarations and exhibits.  In light of the Court's denial of Defendant's Motion to Seal this content, Plaintiff's present Motion to Seal has been rendered moot.  Therefore, the Court **DENIES as moot** Plaintiff's Motion to Seal BASF Corp.'s Motion Pursuant to Federal Rule of Civil Procedure 54(d)(2)(C) for Adversary

Submissions Regarding Defendants' Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs. (Doc. 388.)

## II. Plaintiff's Motion to Defer Determination of Costs and Response in Opposition to Defendants' Bill of Costs (Doc. 391)

As part of its request for attorneys' fees and pursuant to Federal Rule of Civil Procedure 54(d), Defendants filed a Bill of Costs. (Doc. 375.) Plaintiff argues that the Court should defer adjudication of Defendants' request for costs until the Federal Circuit decides Plaintiff's appeal. (Doc. 391, p. 2; see also doc. 403, pp. 3–4.) Plaintiff previously made this request in its Opposition brief to Defendants' Motion for Attorneys' Fees and Expenses, (doc. 371, pp. 2–3), and its Surreply to the same, (doc. 398, pp. 2–3). Defendants filed Replies opposing deferral by the Court. (Doc. 401, pp. 5–6, doc. 382, pp. 21–23; see also doc. 400, pp. 5–7.)

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." In turn, Federal Rule of Civil Procedure 54(d) ordinarily allows the prevailing party to obtain "costs" other than attorney fees, such as clerk of court fees, docketing fees, and transcript printing fees. See 28 U.S.C. § 1920 (outlining taxable costs); Mathews v. Crosby, 480 F.3d 1265, 1276 (11th Cir. 2007) ("Under Rule 54(d), there is a strong presumption that the prevailing party will be awarded costs . . . [but they] may not exceed those permitted by 28 U.S.C. § 1920." (citations omitted)).

When an appeal occurs, the Federal Rules of Civil Procedure grant the district court discretion to defer adjudication of these matters. "If an appeal on the merits of the case is taken, the court may rule on the claim for [attorney's] fees, may defer its ruling on the motion, or may deny the motion without prejudice" and provide a new period for filing after the appeal has been resolved. Fed. R. Civ. P. 54 advisory committee's note to 1993 amendment; see also Fed. R. Civ. P. 58 advisory committee's note to 1993 amendment ("[I]f the claim for [attorney's] fees involves

substantial issues or is likely to be affected by the appellate decision, the district court may prefer to defer consideration of the claim for fees until after the appeal is resolved.")  Furthermore, like with attorneys' fees motions, a court "has discretion to postpone the taxation of costs pending the resolution of an appeal." U.S. ex rel. Lewis v. Walker, No. 3:06-CV-16 CDL, 2010 WL 5169085, at *1 (M.D. Ga. Dec. 13, 2010) (collecting cases); see also Grovner v. Georgia Dep't of Nat. Res., No. 2:13-CV-89, 2015 WL 6453163, at *3 (S.D. Ga. Oct. 23, 2015) ("Rule 54 grants the Court wide discretion to control the timing of decisions on motions for costs filed during the pendency of an appeal . . . .").

Pursuant to this authority, Plaintiff contends the Court should defer resolution of Defendants' Motion for Attorneys' Fees and Expenses, (doc. 360), because doing so would preserve both judicial and party resources, (doc. 371, p. 3).  As Defendants' prevailing party status may change as a result of the appeal, Plaintiff states the Court "need not" sort through the disputed bill of costs issues, (doc. 391, p. 3), or the disputed attorneys' fees issues, (doc. 398, pp. 2–3; doc. 403, p. 3).  In response, Defendants contend that the Court should not issue a deferral or stay because, *inter alia*, Plaintiff's appeal is meritless and postponement would be prejudicial to Defendants.  (Doc. 382, pp. 21–22; see also doc. 401, pp. 5–6, doc. 400, pp. 5–6.)

In this particular case, the Court finds it prudent to defer ruling on Defendants' Motion for Attorneys' Fees and Expenses, (doc. 360; see also doc. 416-1), and Bill of Costs, (doc. 375).[9]

---

[9]  The Court acknowledges that, in the Eleventh Circuit, it is well settled "that costs may be taxed after a notice of appeal has been filed." Rothenberg v. Sec. Mgmt. Co., 677 F.2d 64, 64 (11th Cir. 1982) (citation omitted).  Nevertheless, the Court exercises its discretion to defer ruling on costs as well as Defendants' request for attorneys' fees until the culmination of Plaintiff's appeal before the Federal Circuit. See, e.g., Elver v. Whidden, No. 2:18-CV-102-FTM-29CM, 2019 WL 718536, at *2 (M.D. Fla. Feb. 20, 2019) ("Immediate resolution of the motions [for costs and fees] is unwarranted given the procedural posture of the case.  Because the appeal is pending before the Eleventh Circuit Court of Appeals [], the Court denies [the] defendants' motions [] without prejudice."); Flexiteek Ams., Inc. v. PlasTEAK, Inc., No. 08-60996-CIV-COHN, 2010 WL 2976859, at *7 (S.D. Fla. July 20, 2010) (denying without prejudice motions for

Given the interrelation of the appellate court's ultimate ruling and Plaintiff's defense against Defendants' request for attorneys' fees—that it advanced a "substantively strong" infringement action grounded in sound legal and factual basis, (doc. 371, pp. 3–10)—prudence dictates awaiting the appellate court's ruling, which the Court anticipates will either support or undermine Plaintiff's argument against the award of attorneys' fees; thus, deferral will permit this Court's order on fees to be consistent with the appellate court's view of the case. Furthermore, deferring until such appellate decision issues will obviate the possibility of the Court having to revisit this matter. If the Federal Circuit rules in Plaintiff's favor, any award of costs by this Court to the prevailing party would be rendered null, and the Court would have to readdress this issue following appeal.

Lastly, foregoing a deferral on attorneys' fees and costs would not avoid the specter of piecemeal appeals. Plaintiff's appeal has already been pending since November 2018, (doc. 362), and both parties must refile certain documents sought to be sealed as well as consider adversary submission issues, (docs. 390, 400, 403). In addition, Defendants have requested a hearing on the matter of costs and fees, (doc. 361); the time necessary to schedule and prepare for this hearing would further delay resolution of the attorneys' fees issue and thereby almost certainly preclude the Federal Circuit from jointly considering any appeal therefrom with Plaintiff's pending appeal.[10] "If this Court were to resolve the attorneys' fees and costs issues while an appeal remains pending, it would engage in the piecemeal adjudication of attorneys' fees and costs. Immediate resolution of the collateral issues of attorneys' fees and costs is unlikely to assist the Court of

---

bill of costs and for attorneys' fees and costs pending appeal before the Federal Circuit and permitting the plaintiff to renew).

[10] Furthermore, it is not uncommon in patent cases for two appeals to occur. E.g., Bayer CropScience AG v. Dow AgroSciences LLC, 851 F.3d 1302, 1303 (Fed. Cir. 2017) ("This is the second appeal to our court in this patent infringement lawsuit between plaintiffs-appellants [Bayer] and defendant-appellee Dow AgroSciences LLC."); MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 910 (Fed. Cir. 2012) (appealing attorneys' fee award after Federal Circuit affirmed summary judgment of non-infringement in first appeal).

Appeals." <u>Marinemax v. Nat'l Union Fire Ins. Co.</u>, No. 8:10-CV-1059-T-33AEP, 2013 WL 1222760, at *1 (M.D. Fla. Mar. 25, 2013).

Accordingly, the Court **GRANTS** Plaintiff's Motion to Defer Determination of Costs. (Doc. 391.) Rather than resolving Defendants' Motion for Attorneys' Fees and Expenses and Bill of Costs, (docs. 360, 375), Defendants' Request for Hearing, (doc. 361), and Plaintiff's Motion for Adversary Submissions, (doc. 390), the Court finds that denying theses motions without prejudice and with leave to refile after the conclusion of the subject appeal better serves justice and judicial economy. Therefore, the Court **DENIES without prejudice to refile** Defendants' Motion for Attorneys' Fees and Expenses, (doc. 360), Defendants' Bill of Costs, (doc. 375), Defendants' Request for Hearing, (doc. 361), and Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 54(d)(2)(C) for Adversary Submissions Regarding Defendants' Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs, (doc. 390).

## CONCLUSION

For the reasons set forth above, the Court **DENIES without prejudice**: Plaintiff's Motion to Seal Opposition to Defendants' Motion for Attorneys' Fees and Expenses, (doc. 368); Defendants' Motion to Seal Reply in Support of Defendants' Motion for Attorneys' Fees and Expenses, (doc. 379); Plaintiff's Motion to Seal BASF's Surreply in Opposition to Defendants' Motion for Attorneys' Fees and Expenses, (doc. 393); Defendants' Motion to Seal Declarations Supporting Local Rule 54.2(c) Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable Costs, (doc. 373); and **DENIES as moot** Plaintiff's Motion to Seal BASF Corp.'s Motion Pursuant to Federal Rule of Civil Procedure 54(d)(2)(C) for Adversary Submissions Regarding Defendants' Local Rule 54.2(c) Detailed Itemization and Specification of

Requested Award of Attorneys' Fees and Nontaxable Costs, (doc. 388).[11]  The Court **DIRECTS**

the Clerk of Court to return the materials sought to be sealed, (see docs. 370, 374, 384, 389, 395),

to the submitting parties, Local R. 79.7(c).

The Court, however, **GRANTS** Plaintiff's Motion to Defer Determination of Costs,

(doc. 391), and declines to adjudicate Defendants' Motion for Attorney's Fees and Expenses and

Bill of Costs, (docs. 360, 375), during the pendency of Plaintiff's appeal to the Federal Circuit

Court of Appeals.  As such, the Court **DENIES without prejudice to refile**: Defendants' Motion

for Attorneys' Fees and Expenses, (doc. 360); Defendants' Bill of Costs, (doc. 375); Defendants'

Request for Hearing, (doc. 361); and Plaintiff's Motion Pursuant to Federal Rule of Civil

Procedure 54(d)(2)(C) for Adversary Submissions Regarding Defendants' Local Rule 54.2(c)

Detailed Itemization and Specification of Requested Award of Attorneys' Fees and Nontaxable

Costs, (doc. 390).  The Court **DIRECTS** the respective parties to, if appropriate, refile these

Motions and the Bill of Costs **within twenty-one (21) days** of the date that the Federal Circuit

Court of Appeals issues its mandate on the pending appeal.[12]  Responsive briefing will be due

**within fourteen (14) days** of service of the respective motions and bill of costs, as set forth in

---

[11]  In denying these Motions to Seal without prejudice, the Court notes that, as a general matter, the genuine existence of trade secrets or other proprietary business information within filings gives reason to seal or redact such information from public view.  Blanket assertions, however, do not suffice.  Moreover, content does not warrant confidential protection merely because it was previously filed under seal pursuant to the Protective Order and the Southern District of Texas's Local Rules of Practice for Patent Cases, which permit parties more latitude to seal without motion than do this Court's Local Rules.  Compare S.D. Ga. Local R. 79.7 (requiring a motion and manual filing to seal), with S.D. Tex. Local R. of Practice for Patent Cases 16 (allowing documents to be sealed without motion and to be filed electronically).  Even so, the Southern District of Texas will only "accommodate parties' desire to seal documents **if** the materials being filed are genuinely confidential or proprietary."  Id. (emphasis in original).  Thus the underlying principle remains the same—whether a motion is first required or not, only materials that actually contain confidential or proprietary information are worthy of seal.

[12]  The parties are, of course, free to refile these documents with supplemental argument based on developments before the Federal Circuit or in response to any other relevant subsequent event.  As noted above, if following the Federal Circuit's mandate the parties no longer seek the relief requested in these pleadings, they are not required to file the pleadings.

Local Rules 7.5 and 7.6.  Pursuant to Local Rule 54.2(c), should Defendants remain the prevailing parties post-appeal and should they still seek an attorney's fees award, they shall file and serve their detailed specification and itemization of the requested attorney's fees award **within twenty-one (21) days** of the date that the Federal Circuit issues its mandate.

In so filing these documents, the parties are advised that any request to seal or redact information contained therein must account for the Court's findings in this Order and those in the Order dated July 3, 2019, (doc. 414).  Specifically, the parties must not move to file under seal any information or documents found by the Court to not warrant sealing, and they must narrowly tailor any information relevant to attorneys' fees and costs that they still seek to have sealed.  If the parties seek to seal such content, they must offer particularized reasons as to why specific information or documents require sealing.  As is made clear throughout this Order, conclusory and blanket assertions of confidentiality will not establish the requisite cause to seal.  If, upon reflection, the parties determine that these filings no longer need to be sealed, they may submit them in the normal course.  Local. R. 79.7(c).

**SO ORDERED**, this 5th day of August, 2019.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA